441 F.2d 651
 77 L.R.R.M. (BNA) 2062, 65 Lab.Cas. P 11,665
 INDEPENDENT OIL WORKERS AT PAULSBORO, NEW JERSEY, Affiliated
with the Oil, Chemical and Atomic Workers
International Union, AFL-CIO, as Local
8-831, an unincorporated labor
organization, Appellant,
v.
MOBIL OIL CORPORATION, a corporation, Appellee.
 No. 19026.
 United States Court of Appeals, Third Circuit.
 Argued Jan. 7, 1971.
Decided April 12, 1971.
 
 1
 Abraham L. Friedman, Rothbard, Harris & Oxfeld, Newark, N.J., (Emil Oxfeld, Newark, N.J., John R. Tadlock, Denver, Colo., L. Halpern Miller, Philadelphia, Pa., on the brief) for plaintiff-appellant.
 
 
 2
 Edward F. Callan, Putney, Twombly, Hall & Hirson, New York City (Durand, Twombly & Imbriaco, Newark, N.J., James J. Dean, New York City, on the brief), for defendant-appellee.
 
 
 3
 Before GANEY and ADAMS, Circuit Judges, and WEIS, District Judge.
 
 OPINION OF THE COURT
 
 4
 WEIS, District Judge.
 
 
 5
 It is now firmly established that the policy of Federal Labor Law is to favor arbitration[1] of disputes between labor and management, but since neither Congress nor the Supreme Court has gone so far as to require this procedure in all cases, the sine qua non is a contract between the parties which binds them to this extra-judicial method of resolving disputes.[2]
 
 
 6
 Our inquiry in this case narrows to the single issue of whether the agreement between the parties requires mandatory arbitration, as the Company contends, or whether the procedure is merely optional as the Union insists. Both parties do agree that the resolution of this question is one for the courts.
 
 
 7
 The basic contract between the parties in this case was dated April 30, 1960. It was amended on a number of occasions thereafter, and the present dispute concerns provisions dated January 31, 1967 and March 28, 1969, which plaintiff contends obligate the defendant to pay a designated class of employees certain general wage increases. By agreement of the parties, the issues relating to the 1967 amendment were referred to an arbitrator who submitted a finding in due course. The Union now, however, seeks a declaratory judgment against the Company with respect to the 1969 amendment although it deals generally with the same type of wage adjustment.
 
 
 8
 The District Court ordered a stay pending submission of the matters to an arbitrator because it felt that the collective bargaining agreement[3] was not clear and that doubts should be resolved in favor of arbitration.
 
 
 9
 Article XVII 1. provides that disputes as to the interpretation of or alleged violation of the agreement are to be processed through a grievance procedure, ultimately culminating in arbitration. However, paragraph 3 of that Article reads, 'Nothing in this agreement shall prevent either Company or Union * * * from applying, during the term of this agreement to a court of competent jurisdiction for the relief to which such party may be entitled * * * including but not limited to application for a specific performance of a valid and subsisting labor agreement or any terms and conditions thereof, injunction against present or prospective violation of such agreement, damages as may be proved improperly allowed, etc. and without prejudice in any way to each and every present and future right of the other party under applicable law, rules and regulations in this agreement.'
 
 
 10
 The last clause of paragraph 3 is unintelligible and may be treated as surplusage. It neither adds to nor detracts meaning from the remainder of the paragraph and we therefore disregard it in our interpretation.
 
 
 11
 Taking the words of paragraph 3 at their plain and ordinary meaning,[4] we find that the effect is to make arbitration optional. While Article XVII paragraphs 1 and 2 standing alone might appear to make arbitration compulsory, the qualification of paragraph 3 that 'nothing in the agreement shall prevent' application to a court of competent jurisdiction takes away the mandatory aspect of the contractual grievance procedures.
 
 
 12
 While we are bound by and in agreement with the holding of the Steelworkers Trilogy (footnote 1) that arbitration is to be encouraged and that 'doubts should be resolved in favor of coverage' in interpreting collective bargaining agreements, nevertheless we cannot disregard another statement in one of those cases holding, '* * * arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'[5] In the later Atkinson case, the Court said, 'Under our decisions, whether or not the company was bound to arbitrate, as well as what issues it must arbitrate, is a matter to be determined by the court on the basis of the contract entered into by the parties * * *' /6/
 
 
 13
 In commenting on the Steelworkers Trilogy, this Court in Boeing Company v. International United Automobile Aerospace & Agricultural Implement Workers of America, U.A.W., said:[7]
 
 
 14
 'Despite this liberal rule of construction a reluctant party may not be compelled to submit a controversy to arbitration unless under a fair construction of the agreement he is bound to do so. Absent a contractual obligation to the contrary, a reluctant party is free to pursue any available legal remedy to redress its grievances.'
 
 
 15
 And as Judge Ganey wrote in Halstead & Mitchell Company v. United Steelworkers of America:[8]
 
 
 16
 'While we are not insensitive to the progressive relationship fostered by the courts between Labor and Management, we must, nevertheless, accede to the agreement reached by the parties usually after long hours of debate and a procedure hammering out an agreement with a give-and-take by both parties.'
 
 
 17
 See also Johnson Builders, Inc. v. United Brotherhood of Carpenters et al.;[9] International Union U.A.W. v. Folding Carrier Corporation,[10] where the Court said:
 
 
 18
 'No party has to arbitrate a dispute unless it has consented thereto.'
 
 
 19
 True it is that the parties could have clarified the situation simply by stating that 'arbitration is optional' but it is our task to construe the words as written and not to avoid a determination by judicious use of the acknowledged acuity of hindsight. While Article XVII, paragraph 3, is not a model of draftsmanship and leaves much to be desired from the standpoint of clarity, nevertheless the words, 'nothing in this agreement shall prevent * * *' remove the element of compulsion. This is an 'escape' clause which nullifies the mandatory terms of the earlier language and makes arbitration optional.
 
 
 20
 The Union also presses its motion for partial summary judgment which it filed below but which the District Court did not consider since it entered a stay order. Since the entire dispute will now be for resolution by the District Court, we must decline to rule on the plaintiff's motion at this time.
 
 
 21
 The Order of the District Court is reversed and the matter is remanded for further proceedings not inconsistent with this Opinion.[11]
 
 
 
 [1]
 Textile Workers v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers of America v. Warrior and Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. Enterprise Wheel & Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)
 
 
 [2]
 Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); John Wiley & Sons v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)
 
 
 [3]
 Article XVII
 
 
 [1]
 Disputes only as to the interpretation of or an alleged violation of the application of the terms and provisions of this Agreement, as written, shall first be processed through the Grievance Procedure as provided in Articel XVI hereto. The dispute, if not settled by the Grievance Procedure, shall be submitted to arbitration on the written demand of either party, provided such written demand is made within thirty (30) days from the date of the disposition referred to in Section 4, Step 3, of Article XVI and so long as the grievance arises during the effective term of this Agreement or any extension thereof
 
 
 [2]
 In the event either the Company or the Union elects to arbitration as herein provided, the arbitration proceeding shall be conducted under rules and regulations then obtaining of the American Arbitration Association. The decision of the arbitrator shall be final and binding on the Company and the Union as to the application and interpretation of the terms and provisions of this Agreement for the full term of this Agreement or any extension thereof
 The fees and expenses of the arbitrator and other expenses mutually incurred shall be shared equally by the Company and the Union; all other expenses shall be borne by the party incurring them.
 
 
 [3]
 Nothing in this Agreement shall prevent either Company or Union, if Union then be the accredited collective bargaining representative of employees covered by this Agreement, from applying, during the term of this Agreement, to a court of competent jurisdiction for the relief to which such party may be entitled in accordance with the law applicable in these premsies including, but not limited to, application for specific performance of a valid and subsisting labor agreement or any terms and conditions thereof, injunction against present or prospective violation of such agreement, damages as may be proved and properly allowed, etc., and without prejudice in any way to each and every present and future right of the other party under applicable law, rules and regulations and this Agreement
 
 
 [4]
 '* * * The courts will not write contracts for the parties to them nor construe them other than in accordance with the plain and literal meaning of the language used.' 3 Corbin on Contracts 535
 '* * * In the absence of an intention to the contrary, words employed in a contract will be assigned their clear and plain, common, general, generally accepted, grammatical and ordinary, natural, or normal meaning or sense.' 17a C.J.S. Contracts 301.
 
 
 [5]
 United Steelworkers of America v. Warrior and Gulf Navigation Co., supra, 363 U.S. at pages 582, 583, 80 S.Ct. at page 1353
 
 
 [6]
 Atkinson v. Sinclair Refining Co., supra, 370 U.S. at page 241, 82 S.Ct. at page 1320
 
 
 [7]
 370 F.2d 969, 970 (3rd Cir. 1967)
 
 
 [8]
 421 F.2d 1191, 1193 (3rd Cir. 1969)
 
 
 [9]
 422 F.2d 137, 139 (10th Cir. 1970)
 
 
 [10]
 422 F.2d 47, 49 (10th Cir.). See also International Union of Electrical Radio & Machine Workers v. General Electric Co., 407 F.2d 253 (2nd Cir. 1968). Cert. denied 395 U.S. 904, 89 S.Ct. 1742, 23 L.Ed.2d 217
 
 
 [11]
 We decline to rule that this matter is covered by the doctrine of res judicata on the basis of the case of Independent Oil Workers v. Socony Mobil Oil Co., 82 N.J.Super. 159, 197 A.2d 25 (N.J. Chancery 1964) and 85 N.J.Super. 453, 205 A.2d 78 (N.J. Chancery 1964), but instead rest our decision upon our interpretation of the contract